**21MAG 8794**

Approved: _____
SARAH L. KUSHNER
Assistant United States Attorney

Before:  HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA        :   **SEALED COMPLAINT**
                                :
                                :   Violation of 18 U.S.C. §
        - v. -                  :   1956
                                :
XIN LIN,                        :   COUNTY OF OFFENSE:
                                :   BRONX
                                :
            Defendant.          :
                                :

- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

   WILLIAM J. CALLAHAN, being duly sworn, deposes and says that he is Special Agent with the U.S. Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE

#### (Conspiracy to Commit Money Laundering)

   1.  In or about September 2021, in the Southern District of New York and elsewhere, XIN LIN, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the money laundering laws of the United States.

   2.  It was a part and an object of the conspiracy that XIN LIN, the defendant, and others known and unknown, knowing that the property involved in certain financial transactions, to wit, cash transactions, represented the proceeds of some form of specified unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, narcotics offenses in violation of Title 21, United States Code, Sections 841 and 846, knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, location, source, ownership,

and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

3. I am a Special Agent with DEA. I have been personally involved in the investigation of this matter, and this affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### The September 8 Transaction

4. Based on my discussions with a Source of Information ("SOI"), my review of text messages obtained from the SOI, my review of text messages obtained from XIN LIN, the defendant, and my own personal participation in this investigation, including surveillance conducted at various locations in New York City and on Long Island on or about September 8, 2021, I have learned, among other things, the following[1]:

a. The SOI has been in contact with a money laundering broker ("Broker-1") believed to be based in Mexico.

b. On or about September 6, 2021, Broker-1 asked the SOI if the SOI knew anyone who could handle a money pickup of a large amount of cash in U.S. currency from an individual ("Co-Conspirator-1") in the Bronx, New York, and deliver it to another individual — subsequently identified as LIN — in Flushing, Queens

---

[1] The SOI has a criminal history, including a prior drug arrest. The SOI is not being paid by the DEA but is providing information in the hopes of becoming a paid informant in the future. The DEA has not made any promises or representations in that regard. The information the SOI has provided to date has been corroborated by independent evidence, including seizures of U.S. currency, and has been deemed reliable by law enforcement.

(the "Flushing Address"). On or about September 8, 2021, the SOI, working with the DEA, put Broker-1 in contact with a confidential source ("CS-1") working with the DEA.[2] Broker-1 contacted CS-1 and directed CS-1 to pick up a bag of money ("Bag-1") from Co-Conspirator-1 in the Bronx, New York, which CS-1 did.

        c.    Meanwhile, on or about September 8, 2021, LIN and Co-Conspirator-1 were in contact and exchanging text messages. LIN provided Co-Conspirator-1 with the Flushing Address. After CS-1 met Co-Conspirator-1 to pick up Bag-1, Co-Conspirator-1 directed CS-1 to bring the money to, and drop it off with, LIN at the Flushing Address.

        d.    In advance of that drop off, LIN gave Co-Conspirator-1 the serial number ("Serial Number-1") of a U.S. dollar bill in LIN's possession. Co-Conspirator-1, in turn, provided Broker-1 Serial Number-1, who in turn, provided Serial Number-1 to CS-1.

        e.    After CS-1 picked up Bag-1, law enforcement agents swapped out the real cash (in U.S. currency) in Bag-1 with fake currency and a GPS tracker.[3] CS-1 then met LIN at the Flushing Address. At that drop off, LIN showed CS-1 the U.S. dollar bill with Serial Number-1, at which point CS-1 delivered Bag-1 (with the fake currency and GPS tracker) to LIN.[4]

---

[2] During the course of this investigation, I and other DEA agents have worked with CS-1. CS-1 is a DEA informant who has been providing information to the DEA since approximately 2015, initially for sentencing benefits and, more recently, for payment and immigration benefits. Information provided by CS-1 as part of this investigation and other investigations has proven reliable in the past and been corroborated by other independent evidence, including, among other things, surveillance by law enforcement as described herein.

[3] At all times, however, law enforcement agents personally observed LIN and had a visual on LIN and his whereabouts. In other words, law enforcement did not have to rely on information from the GPS tracker to follow LIN.

[4] Based on my training and experience, I know that the purpose of the exchange of serial numbers is for those involved in the pick up and/or drop off of illegal proceeds to be able to determine that any courier purporting to act on behalf of a drug trafficking and/or money laundering organization ("DTMLO") is legitimate, that is, actually working for the DTMLO and not law enforcement.

f.  LIN then drove in a car ("Car-1") to a second location in the vicinity of Roslyn, Long Island, where I and other law enforcement agents personally observed him pick up a second bag ("Bag-2"), that law enforcement later determined contained U.S. currency, as described below, from another individual.

g.  After that, LIN drove in Car-1 to his home ("Residence-1") on Long Island.  LIN pulled into his driveway at approximately 11:30 p.m.  At that point, I and other law enforcement agents approached and arrested LIN in his driveway.

<u>September 8 Arrest Of Xin Lin And Searches Of His Car And Residence</u>

5.  As discussed above in Paragraph 4(g), on or about September 8, 2021, at approximately 11:30 p.m., I and other law enforcement agents approached XIN LIN, the defendant, while he was sitting in Car-1 in his driveway, arrested him, and searched Car-1.

6.  Based on my discussions with other law enforcement agents who searched Car-1, and my own participation in the arrest of XIN LIN, the defendant, I have learned, among other things, that Car-1 contained Bags-1 and -2, as well as two other bags of money ("Bag-3" and "Bag-4").  Bags -1 and -3 were on the floor by the passenger seat; Bag-2 was on the passenger seat; and Bag-4 was in the trunk, and was labeled "$80K."  Bags -2, -3, and -4 each contained tens of thousands of U.S. dollars.  Bag-1 contained the fake currency and GPS tracker.

7.  Based on my own participation in this case, I know that, after XIN LIN, the defendant, was apprehended in his driveway, his wife, who also lives in Residence-1 and shares a bedroom with LIN, voluntarily allowed law enforcement agents

---

Generally speaking, when a courier purporting to act on behalf of a DTMLO is tasked with delivering or receiving narcotics proceeds that the DTMLO wants to launder, the courier provides the broker with a serial number.  If the serial number that the courier provides to the broker matches one of the serial numbers of a dollar bill that the courier has in his/her possession, the broker — and, in this case the CS-1 acting at the broker's direction — knows that the courier is legitimate, and can proceed with the transfer of narcotics proceeds.  Based on my training and experience, I know that money launderers and narcotics traffickers often use the serial numbers of dollar bills in substantially the same manner as that described above, to ensure the legitimacy of couriers and others involved in illegal activity.

inside Residence-1. Law enforcement agents also requested permission to search Residence-1, and LIN's wife voluntarily consented to such a search.

8. Based on my own participation in this case, I know that XIN LIN, the defendant, was then *Mirandized* inside Residence-1, and agreed to waive his *Miranda* rights.

9. Based on my discussions with law enforcement agents involved in the search of Residence-1, I have learned, among other things, that inside LIN's bedroom, there was more cash as well as three money counters.

10. Based on my and other law enforcement agents' discussions with XIN LIN, the defendant, at Residence-1, I have learned, among other things, that, after LIN was *Mirandized* and agreed to waive his *Miranda* rights, LIN stated, in substance and in part, the following:

a. LIN receives assignments like the ones discussed above to pick up cash from an individual ("Broker-2") located in Canada.

b. September 8, 2021, was not the first time that LIN participated in such money laundering transactions at Broker-2's direction.

c. In general, Broker-2 will provide LIN's contact information to other individuals who have U.S. currency that needs to be laundered. Those individuals will then contact LIN and coordinate a drop off of the cash with LIN. LIN then exchanges that cash for Chinese Yuan. Broker-2 then provides LIN with a bank account number, and LIN deposits the Chinese Yuan into the relevant bank account. The bank and bank account number constantly changes.

11. Based on my review of text messages that XIN LIN, the defendant, voluntarily showed law enforcement agents after his arrest, I have learned, among other things, that on or about September 8, 2021, LIN and Co-Conspirator-1 exchanged text messages, including as follows:

a. At approximately 9:59 a.m., LIN texted Co-Conspirator-1 the code for Serial Number-1.

b. At approximately 10:00 a.m., LIN texted Co-Conspirator-1 the Flushing Address, where CS-1 subsequently met LIN later that night.

12. Based on my review of text messages obtained from the SOI, I have learned, among other things, that on or about September 8, 2021, at approximately 10:14 a.m., Broker-1 texted the SOI the Flushing Address and the code for Serial Number-1.

WHEREFORE, I respectfully request that a warrant issue for the arrest of XIN LIN, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

_____
WILLIAM J. CALLAHAN
Special Agent
DEA

Sworn to before me this
9th day of September, 2021

_____
HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York